**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0533n.06

No. 17-5062

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Sep 18, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| DONALD BLAKLEY, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before: MERRITT, MOORE, and ROGERS, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Defendant-Appellant Donald Blakley appeals the district court's judgment revoking supervised release and imposing an eighteen-month sentence. In 2005, after a jury found Blakley guilty of possessing child pornography, the district court sentenced him to eighty-seven months in prison and to a life term of supervised release. After his release, the probation office discovered that Blakley owned a cell phone with a working front-facing camera and internet access. The district court found that Blakley's possession of this cell phone violated two supervised-release conditions, so it revoked his supervised release and sentenced him to eighteen months in prison, which is above the recommended Guideline range. For the reasons discussed below, we **AFFIRM** (1) the district court's revocation of Blakley's supervised release and (2) Blakley's sentence.

## I.  BACKGROUND

In 2005, a jury found that Blakley was guilty of possessing child pornography, R. 47 (Verdict Form at 42–47) (Page ID #139–44), and the district court sentenced Blakley to eighty-seven months in prison, R. 66 (J. at 2) (Page ID #211).  The district court also ordered that Blakley serve a life term of supervised release, *id.* at 3 (Page ID #212), and so the probation office began to monitor Blakley after his release in 2011, R. 113 (Order at 1–2) (Page ID #1005–06).

Blakley violated the terms of his supervised release on two prior occasions.  R. 153 (Sentencing Hr'g Tr. at 130:14–131:1) (Page ID #1234–35).  Blakley's termination from the Kentucky Sex Offender Treatment Program resulted in a violation of a supervised-release condition, and the district court sentenced him to four weekends of confinement.  *Id.* at 130:14–18 (Page ID #1234).  Then, in October 2014, the district court sentenced Blakley to four months in prison for violating two supervised-release conditions, viewing pornography and unauthorized association with a minor.  *Id.* at 130:20–23 (Page ID #1234).

On December 6, 2016, Blakley's probation officer, Matthew Armstrong, visited Blakley's residence.  *Id.* at 9:23–10:2 (Page ID #1113–14).  During that visit, Armstrong noticed that Blakley's cell phone was connected to a Wi-Fi network and an email account.  *Id.* at 10:7–16, 29:14–23 (Page ID #1114, 1133).  After analyzing the cell phone, the probation office determined that it had a functioning front-facing camera and had accessed the internet.  *Id.* at 11:3–13:2, 17:16–19 (Page ID #1115–17, 1121).

The district court found that Blakley's possession of this cell phone violated two supervised-release conditions: (1) possessing a device capable of taking a picture and (2) possessing a device capable of accessing the internet. *Id.* at 115:2–6, 115:18–116:24, 117:15–19 (Page ID #1219, 1220, 1221). To deter Blakley, the district court imposed an eighteen-month sentence, which is above the recommended Guideline range. *Id.* at 119:20–24, 136:1–4 (Page ID #1223, 1240).

## II. DISCUSSION

Blakley raises two issues on appeal. First, Blakley argues that the district court abused its discretion by revoking his supervised release. Second, Blakley argues that his sentence is unreasonable. We consider each of these arguments in turn.

## A. The District Court Did Not Abuse Its Discretion by Revoking Blakley's Supervised Release

Under 18 U.S.C. § 3583(e)(3), a district court can revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant has violated a condition. We use the abuse-of-discretion standard for reviewing a revocation of supervised release, the clear-error standard for factual findings, and the de-novo standard for legal conclusions. *See United States v. Kontrol*, 554 F.3d 1089, 1091–92 (6th Cir. 2009) (citing *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006); *United States v. Cofield*, 233 F.3d 405, 406 (6th Cir. 2000); and *United States v. Crace*, 207 F.3d 833, 835 (6th Cir. 2000)).

In addition, when "addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute

3

our judgment for that of the jury." *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) (citing *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Brooks v. Tennessee*, 626 F.3d 878, 900 (6th Cir. 2010) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985)).

### 1. Possession of a Device Capable of Creating Pictures

Inconsistencies within Blakley's testimony support the district court's conclusion that Blakley's assertion—he was unaware that his cell phone had a front-facing camera—was not credible. R. 153 (Sentencing Hr'g Tr. at 116:1–24) (Page ID #1220). At the hearing, Blakley discussed the cell phone's appearance and features:

> [Attorney.]   Okay. That little circle that's on the front of the screen that's on your HTC Desire phone, that little circle on the front, what do you think that's for?
>
> [Blakley.]   I'm not sure, due to the fact that I can't see real good up close. I have to have glasses.
>
> [Attorney.]   Well, you could see good enough to operate the phone, right?
>
> [Blakley.]   Not without glasses.
>
> [Attorney.]   Okay. Well, when you used your glasses to look at the phone to dial numbers or read text or check your bank account, that circle at the top of the phone, what's that for?
>
> [Blakley.]   I don't know. I'd never looked at it that close.
>
> [Attorney.]   Well, I mean, it's not that small. It's large and it has a bevel around it. Is that not a - - is that not a front-facing camera?

4

[Blakley.]    The only - - the only bevel that I saw on it is on the back.  I've never seen one on the front.

*Id.* at 75:4–23 (Page ID #1179).  However, when questioned about how the picture appeared on his cell phone, Blakley stated that "[n]inety (90) percent of all phones can receive a picture through Bluetooth, which does not access the Internet."  *Id.* at 74:13–19 (Page ID #1178).  This technical statement brings into question Blakley's assertion that he did not know his cell phone had a front-facing camera, and the district court relied on the inconsistencies in Blakley's testimony to determine his credibility.  *Id.* at 116:1–24 (Page ID #1220).

Armstrong's testimony also contradicts Blakley's testimony.  When Armstrong confronted Blakley, Blakley told Armstrong that a friend had used the cell phone to take the picture.  *Id.* at 15:5–12 (Page ID #1119).  Blakley's prior statement to Armstrong contradicts his testimony at the hearing that he did not know whether his friend transmitted the picture to Blakley's cell phone or whether his friend used the cell phone to take the picture.  *Id.* at 73:14–20 (Page ID #1177).  Because the evidence creates two possible views—Blakley did not know how the picture appeared on his cell phone or Blakley knew that his friend took the picture—the district court did not clearly err by finding that Blakley knew that the cell phone had a working camera.

## 2. Possession of a Device Capable of Accessing the Internet

The evidence shows that Blakley did not have permission to possess a cell phone with internet access.  According to Armstrong, Blakely had permission to use the internet only through a computer with monitoring software.  *Id.* at 33:13–17 (Page ID #1137).  To possess a

5

cell phone with internet access, Blakley needed to obtain permission. *Id.* at 20:6–21 (Page ID #1124). While Blakley's probation officers might have known that Blakley had a cell phone, they did not know that he had a smartphone. *Id.* at 21:22–25:10, 44:13–46:7, 85:8–86:12 (Page ID #1125–29, 1148–50, 1189–90). Therefore, the district court could find that Blakley did not have permission to possess a cell phone with internet access.

The district court also did not clearly err by finding that Blakley accessed the internet. Armstrong observed that Blakley's cell phone had a Wi-Fi signal and was connected to an email account, which Blakley owned. *Id.* at 10:7–16, 29:14–23, 43:12–44:11 (Page ID #1114, 1133, 1147–48). After the probation office conducted a forensic analysis, Armstrong learned that the phone had 676 web-history entries dating from August 2016 to December 2016 and had downloaded images of fairies. *Id.* at 11:3–13:2 (Page ID #1115–17). During his testimony, Blakley admitted that (1) he used the phone to access his bank, *id.* at 54:16–56:12 (Page ID #1158–60), and (2) the phone could access the internet, *id.* at 70:5–7 (Page ID #1174). Therefore, sufficient evidence supports the district court's determination that Blakley violated this supervised-release condition.

## B. Blakley's Sentence Is Not Procedurally or Substantively Unreasonable

When a district court revokes a defendant's supervised release, it can sentence that defendant to an imprisonment term. 18 U.S.C. § 3583(e)(3). "[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable'" under an "abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 46 (2007). "Abuse of discretion occurs when a

district court 'relies on clearly erroneous findings of fact, improperly applies the law, or uses an erroneous legal standard.'" *United States v. Munoz*, 605 F.3d 359, 366 (6th Cir. 2010) (quoting *United States v. Washington*, 584 F.3d 693, 695 (6th Cir. 2009)). We can "overturn a sentence only if it is procedurally or substantively unreasonable[.]" *Kontrol*, 554 F.3d at 1092 (citing *United States v. Houston*, 529 F.3d 743, 753 (6th Cir. 2008)).

## 1. Procedurally Unreasonable

"The determination of which standard of review applies to a defendant's challenge to the procedural reasonableness of a sentence depends on whether the defendant preserved that challenge for appeal by making a clear objection." *United States v. Taylor*, 800 F.3d 701, 713 (6th Cir. 2015). "[A]fter pronouncing the defendant's sentence but before adjourning the sentencing hearing," a district court needs "to ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). The abuse-of-discretion standard applies if a defendant objected to a procedural defect at sentencing. *Taylor*, 800 F.3d at 713 (citing *United States v. Richards*, 593 F. App'x 500, 503 (6th Cir. 2014)). If a defendant did not object to a procedural defect, then plain error is the proper standard. *Bostic*, 371 F.3d at 872–73; *see also United States v. Wallace*, 597 F.3d 794, 802 (6th Cir. 2010).

At the sentencing, the district court asked Blakley whether he had any objections under *Bostic*: "I'll also hear from the parties if there are any objections under *United States V. Bostick* [sic]. Of course, under that case of the Sixth Circuit, any objections not previously raised would

7

need to be raised at this time . . . ."  R. 153 (Sentencing Hr'g Tr. at 139:24–140:4) (Page ID #1243–44).  After the district court made clear that Blakley needed to object to a procedural defect to raise the issue on appeal, Blakley's attorney objected only to the length of the sentence, a substantive issue:  "Judge, we object to the sentence above the guideline range.  We don't think that's appropriate under the circumstances and I guess the substantive matter as far as what the charges are.  We do not request any additional findings."  *Id.* at 140:13–17 (Page ID #1244).  Therefore, plain error is the proper standard.

To receive relief under the plain-error standard, there needs to be "exceptional circumstances."  *Houston*, 529 F.3d at 750 (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)).  For this standard, "a defendant must show (1) error (2) that was obvious or clear, (3) that affected defendant's substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings."  *Wallace*, 597 F.3d at 802.

A procedural error needs to be significant.  *Gall*, 552 U.S. at 51.  There are several errors that meet this threshold:  "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range."  *Houston*, 529 F.3d at 753 (quoting *Gall*, 552 U.S. at 51).  It is also important to note that "[w]e afford the district court's credibility determinations regarding witness testimony great deference and must uphold

its findings of fact unless they are clearly erroneous." *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007) (citing *United States v. Horn*, 355 F.3d 610, 613 (6th Cir. 2004)).

According to Blakley, the district court relied on a clearly erroneous fact when it found that his testimony was not credible because there was no evidence that computer skills equate to cell-phone skills, Appellant's Br. at 18; however, evidence supports the district court's conclusion. At the hearing, Blakley admitted that he has computer skills, *id.* at 69:14–16 (Page ID #1173), and it is not unreasonable to infer that an individual with computer skills is technologically savvy. Blakley also testified that "[n]inety (90) percent of all phones can receive a picture through Bluetooth," so Blakley demonstrated his cell-phone knowledge at the hearing. *Id.* at 74:17–19 (Page ID #1178). In addition, Blakley told Armstrong that Blakley's friend had used the phone to take a picture, which is contrary to Blakley's testimony. *Id.* at 15:5–12, 73:14–74:12 (Page ID #1119, 1177–78). Because the record supports the district court's credibility determination, it did not make a procedural error. Therefore, Blakley does not have a valid procedural-unreasonableness challenge.

### 2. Substantively Unreasonable

When examining whether a sentence is substantively unreasonable, we consider the totality of the circumstances. *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (quoting *Gall*, 552 U.S. at 51). "A sentence is substantively unreasonable if the sentencing court arbitrarily selected the sentence, based the sentence on impermissible factors, failed to consider pertinent § 3553(a) factors, or gave an unreasonable amount of weight to any

pertinent factor." *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012) (citing *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006)). "When a district court considers the relevant 3553(a) factors in-depth and reaches its determination that the appropriate sentence varies outside the advisory Guidelines range, we are very reluctant to find the sentence unreasonable." *United States v. Wendlandt*, 714 F.3d 388, 397 (6th Cir. 2013) (quoting *Collington*, 461 F.3d at 811). For example, when a defendant has violated a supervised-release condition on prior occasions, we have found that a sentence longer than the Guideline range is acceptable. *See, e.g.*, *United States v. Keisel*, 400 F. App'x 33, 42 (6th Cir. 2010); *United States v. Polihonki*, 543 F.3d 318, 326 (6th Cir. 2008); *United States v. Johnson*, 403 F.3d 813, 817 (6th Cir. 2005).

While determining Blakley's sentence, the district court thoroughly discussed the appropriate factors:

> In 2013, he had a violation. Conditions were modified, and I believe that was at the request of the probation office, of four weekends of confinement because he was unsuccessfully terminated from the Kentucky Sex Offender Treatment Program. So for a violation, relatively modest punishment at the time.
>
> And that same thing happened for the next violation in October of 2014. He was revoked due to non-compliance for unauthorized association with a minor and for viewing pornography.
>
> . . . .
>
> And this defendant has shown that he doesn't deserve any trust from the Court or from the probation officers that are supervising him because he tries to take advantage of every opportunity that's given to him. And that's part of his history and characteristics, and that's another factor that the Court does take into account.

10

. . . .

Another factor that the Court does consider that is incorporated from 3553 is the issue of deterrence. . . . Lenient treatment previously has not deterred his continuing and his ongoing attempts to skirt the rules.

. . . .

And I'm also concerned about the need to protect the public from this defendant, who has demonstrated that he can't be trusted, and he does present a danger.

. . . .

. . . I consider all the other factors of 3553 subsections (a) (2), (a) (4), (a) (5) and (a) (6), the need to avoid unwarranted sentencing disparities amongst defendants with similar offenses who have done similar conduct, and that does cause me to consider whether a guideline sentence would be appropriate.

But for the reasons that the United States has articulated, and for the reasons that I've explained, that would not provide proper deterrence for this defendant.

R. 153 (Sentencing Hr'g Tr. at 130:14–134:24) (Page ID #1234–38). As the district court stated, Blakley violated his supervised release on two prior occasions, so the district court did not give an unreasonable amount of weight to the deterrence factor. Because the district court thoroughly considered the relevant 3553(a) factors, Blakley's sentence is not substantively unreasonable.

### III. CONCLUSION

Because sufficient evidence supports the district court's finding of violations of Blakley's supervised release conditions and because the sentence imposed is neither procedurally nor substantively unreasonable, we **AFFIRM** (1) the district court's revocation of Blakley's supervised release and (2) Blakley's sentence.